FOX ROTHSCHILD LLP
BY: JOHN WAIT, ESQUIRE (JW 2558)
100 PARK AVENUE, SUITE 1500
NEW YORK, NEW YORK 10016
(212) 878-7900   *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOEL S. ARIO, in his official capacity as
Acting Insurance Commissioner of the
Commonwealth of Pennsylvania, as statutory
Liquidator of RELIANCE INSURANCE
COMPANY (IN LIQUIDATION)
1311 Strawberry Square
Harrisburg, Pennsylvania 17120

    Plaintiff,

v.

CONSTITUTION STATE SERVICES, LLC
f/k/a CONSTITUTION STATE SERVICE
COMPANY
c/o Travelers Indemnity Co.
One Tower Square 5 MN
Hartford, Connecticut 06183

    Defendant.




Civil Action No.

**COMPLAINT**

Plaintiff Joel S. Ario, in his official capacity as Acting Insurance Commissioner of the Commonwealth of Pennsylvania, as statutory Liquidator (the "Liquidator") of Reliance Insurance Company (In Liquidation) ("Reliance"), by way of Complaint against defendant Constitution State Services, LLC f/k/a Constitution State Service Company ("CSS") states:

### I.     Nature of the Action

1.     From some time in or about 1990, CSS performed services for Reliance Insurance Company and its affiliates (collectively, "Reliance") as a third party administrator with respect to insurance claims made under policies issued by Reliance. Pursuant to its

written agreements with CSS, for each policyholder account that CSS was contractually administering for Reliance, Reliance provided funds to CSS for deposit into a disbursement bank account established by CSS on behalf of Reliance. From such disbursement account, CSS would pay, on behalf of Reliance, policyholder claims and allocated loss expenses as defined in and pursuant to the terms of the parties' written agreements. When Reliance was placed into liquidation on October 3, 2001, CSS held funds belonging to Reliance. At liquidation, those funds became assets of and remain the property of the Reliance estate. CSS also received post-liquidation subrogation recovery funds in connection with claims and allocated loss expenses that it paid on behalf of Reliance for policyholder accounts, and under an agreement whereby Reliance agreed to assume deductible obligations of an insured under policies issued to it by an insurer other than Reliance. Those subrogation recovery funds are assets of the Reliance estate. Despite demand, CSS has failed and refused to turn over the funds belonging to Reliance, to the Liquidator as required by the terms of the Commonwealth Court of Pennsylvania's October 3, 2001 Order of Liquidation, the statutory provisions of the Pennsylvania Insurance Department Law of 1921, as amended, and common law. This civil action seeks monetary damages and other relief arising out of the willful failure and refusal of CSS to return assets of the Reliance liquidation estate in the amount to date of approximately $2.7 million.

## II.    The Parties

2.    The Liquidator brings this action in his official capacity as Statutory Liquidator of Reliance, by virtue of the authority vested in him pursuant to the Order of the Commonwealth Court of Pennsylvania dated October 3, 2001 at case no. 269 MD 2001, naming former Insurance Commissioner M. Diane Koken and her successors in office as the

Liquidator of Reliance (the "Liquidation Order"), and Article V of the Pennsylvania Insurance Department Law of 1921, as amended, 40 P.S. §§ 221.1 *et seq.* A copy of the Liquidation Order is attached hereto as Exhibit "A" and incorporated herein by reference. Pursuant to ¶ 27 of the Liquidation Order, "[a]ll references to 'Reliance' herein shall include the former subsidiaries which were previously merged into Reliance Insurance Company with approval of the Commissioner, including Reliance National Indemnity Company, Reliance National Insurance Company, United Pacific Insurance Company, Reliance Direct Company, Reliance Surety Company, Reliance Universal Insurance Company, United Pacific Insurance Company of New York and Reliance Insurance Company of Illinois."

    3.     The Liquidation Order directs the Liquidator to immediately take possession of Reliance, to liquidate Reliance, and to take such action as may be required to advance the interests of Reliance's enrollees, creditors and the public; vests title to all Reliance property, assets, and rights of action with the Liquidator; asserts the Commonwealth Court of Pennsylvania's *in rem* jurisdiction over all assets of Reliance wherever located and regardless of whether they are held in the name of Reliance or any other name; and directs any entity in possession of assets which are or may be the property of Reliance to immediately deliver possession of such assets to the Liquidator and not to disburse, transfer or in any manner dispose of such assets without the prior written consent of, or unless directed in writing by, the Liquidator. *See* Liquidation Order, Exhibit "A", ¶¶ 3, 5 and 7.

    4.     By statute, the Liquidator is authorized to commence legal proceedings in any jurisdiction, either in his name or in the name of Reliance, seeking recovery for all claims belonging to Reliance, including for the collection of debts and monies due. *See* 40 P.S. § 221.23 (6) and (12).

5. The Liquidator is the proper party-plaintiff in this action.

6. The Liquidator has a principal office at 1311 Strawberry Square, Harrisburg, Pennsylvania 17120.

7. Reliance is a Pennsylvania business corporation with its principal place of business at Three Parkway, Philadelphia, Pennsylvania 19102-1376.

8. CSS is a Delaware limited liability company and a subsidiary of Travelers Group, Inc., with a principal place of business located c/o Travelers Indemnity Co. at One Tower Square 5 MN, Hartford, Connecticut 06183.

### III.   Jurisdiction and Venue

9. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Reliance is a Pennsylvania business corporation with its principal place of business in Pennsylvania. CSS is a business enterprise organized under Delaware law with its principal place of business in Connecticut. The matter in controversy exceeds the sum or value of $75,000, as Reliance claims damages of approximately $2.7 million.

10. This Court may assert personal jurisdiction over the defendant. In the third party administrator agreements between Reliance and CSS, the parties agreed to submit to the jurisdiction of federal or state courts located in the State of New York for the purpose of any action brought in connection with the agreements and further agreed that any dispute arising out of or in connection with the agreements shall be resolved in the appropriate federal or state court located in the State of New York. The parties further agreed that the laws of the State of New York shall apply to the agreements and to disputes arising out of or in connection with such agreements.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

4

## IV. Factual Background

### The Contractual Relationship

12. Beginning some time in or about 1990 and continuing thereafter until 2000, Reliance and CSS entered into a series of Claims Service Agreements pursuant to which CSS acted as third party administrator on behalf of Reliance. The Agreements identify the policyholder and the policies for which CSS was to handle all claims submitted under the policies to completion. Under the Agreements, CSS provided services with respect to the investigation, adjustment, settlement and payment of insurance claims under the specified liability policies, including general liability, workers' compensation and automobile policies issued by Reliance and its affiliates. A true and correct copy of a representative sample of a Claims Services Agreement is attached hereto as Exhibit "B" and is incorporated therein by reference.

13. In connection with its services on policyholder accounts under the Agreements, CSS agreed, *inter alia*, to make all payments with respect to claims and to pay all allocated loss expenses, as defined in the Agreements, from funds provided by Reliance in accordance with the terms and provisions of the Agreements.

14. In connection with its services on policyholder accounts under the Agreements, CSS was to establish a regular bank checking account on behalf of Reliance with CSS as custodian for Reliance (the "Disbursement Account"). Reliance made an initial transfer of imprest funds to the Disbursement Account and thereafter provided additional funding for the Disbursement Fund from a Reliance bank account (the "Funding Account").

15. Under the Agreements, CSS was to use the Disbursement Accounts exclusively to pay claims and allocated loss expenses, as defined in the Agreements, under the Reliance

policies and to deposit subrogation recoveries in accordance with the terms of the Agreements. Until payments for claims and allocated loss expenses were made, all funds in the Disbursement Accounts were held for the benefit of, are assets of, and remain the property of Reliance.

16. Pursuant to the Agreements, at such time as CSS no longer had to provide services under the Agreements, CSS was to close the Disbursement Accounts and remit any closing balances to Reliance and to forward immediately to Reliance any subrogation recoveries received after closing of the Disbursement Accounts.

**CSS Fails to Return Funds That Are Assets of the Reliance Estate**

17. Accounts for policyholders insured by Reliance for which CSS acted as a third party administrator under Agreements with Reliance included the following:

    (a) Batus Holdings d/b/a Brown & Williamson Tobacco, Co.

    (b) Citibank

    (c) Able Telecom

    (d) Ames Department Store

    (e) Straub Clinic & Hospitals

    (f) Sisters of Christian Charity

    (g) PFS Pepsico

    (h) Workers Temporary Staffing

((a) through (h) collectively, the "Accounts").

18. Under the Agreements, CSS made payments on the Accounts for insurance claims and allocated loss expenses from funds provided by Reliance.

19. Upon information and belief, CSS requested and received funds from the Reliance Funding Account for payment of claims and allocated loss expenses on at least one Account for which CSS had already received funds for such payments. This double funding resulted in excess funding held by CSS for that Account of approximately $650,000.

20. CSS did not notify Reliance of the double funding referred to in paragraph 19, and did not return the excess funds to Reliance.

21. Shortly after Reliance was placed into liquidation on October 3, 2001, CSS was put on notice to cease making all claims payments and allocated loss expense payments on the Accounts except for workers' compensation indemnity payments, which CSS was authorized to pay only up to and including November 16, 2001, and to turn over open claims on the Accounts to the appropriate state insurance guaranty associations for handling. CSS ignored such notice and continued to make improper claims payments and allocated loss expense payments on the Accounts post-liquidation.

22. Despite its contractual and fiduciary obligations to close the Disbursement Accounts and to remit any closing balances to Reliance after Reliance was placed in liquidation, CSS improperly exercised dominion over funds that belonged to Reliance post-liquidation.

23. CSS has withheld assets and property of Reliance constituting excess loss funding in the amount of at least $1,462,518.01, exclusive of interest, with respect to the Accounts as follows:

    (a) Batus Holdings d/b/a Brown & Williamson Tobacco Co.  $764,016.06

    (b) Citibank  $325,625.97

    (c) Able Telecom  $318,124.01

|     |                              |              |
|-----|------------------------------|--------------|
| (d) | Ames Department Store        | $ 32,975.30  |
| (e) | Straub Clinic & Hospitals    | $ 16,647.89  |
| (f) | Sisters of Christian Charity | $ 3,611.81   |
| (g) | PFS Pepsico                  | $ 900.00     |
| (h) | Workers Temporary Staffing   | $ 661.97     |

((a) through (h) collectively the "Excess Funds").

24. Despite demand, CSS has failed to turn over to Reliance the Excess Funds, which are the assets and property of Reliance.

25. Despite demand, CSS has only remitted to Reliance the sum of $15,000, consisting of three small initial imprest deposits for the following Accounts: Straub Clinic & Hospital ($2,500), Able Telecom ($5,000), and Workers Temporary Staffing ($7,500).

**CSS Fails to Return Subrogation Recovery Funds That Are Assets of the Reliance Estate**

26. Under the Agreements, CSS was to also use the Disbursement Accounts to deposit subrogation recoveries in accordance with the terms of the Agreements.

27. CSS has collected but failed to remit to Reliance at least $208,220.17 in post-liquidation subrogation recoveries for pre-liquidation claims paid by Reliance on the Batus Holdings d/b/a Brown & Williamson Tobacco Co. Account (the "Batus Subrogation Recoveries").

28. In 1999, Reliance entered into a Novation Agreement with The Travelers Indemnity Company ("Travelers") and Chase Manhattan Bank ("Chase") pursuant to which Reliance took over, *inter alia,* the obligations of Chase to pay for claims up to their deductible limits under certain policies that Travelers had issued to Chase (the "Chase Account").

29. Prior to liquidation, Reliance funded payments under the Novation Agreement in excess of $1 million.

30. CSS has collected but failed to remit to Reliance approximately $1 million in post-liquidation subrogation recoveries on the Chase Account (the "Chase Subrogation Recoveries"). The Batus Subrogation Recoveries and the Chase Subrogation Recoveries are referred to collectively as the "Subrogation Recoveries."

31. Despite demand, CSS has failed to turn over to Reliance the Subrogation Recoveries, which are the assets and property of Reliance.

## COUNT I
### (Breach of Contract)

32. Reliance repeats and realleges the allegations contained in paragraphs 1 through 31 as though set forth fully at length herein.

33. Pursuant to the Agreements, at such time as CSS was no longer required to provide services with respect to any claim thereunder, CSS was obligated to close the Disbursement Accounts for each Account and to remit the closing balance to Reliance.

34. CSS is no longer required to provide services with respect to any claim under the Agreements.

35. Reliance has made demand upon CSS to remit the Excess Funds and the Subrogation Recoveries to Reliance and CSS has refused.

36. CSS has breached its Agreements with Reliance by failing to remit the Excess Funds and the Subrogation Recoveries to Reliance.

37. Due to the foregoing conduct, Reliance has sustained damages to date of approximately $2.7 million and is entitled to relief as set forth below.

## COUNT II
### (Breach of Fiduciary Duty)

38. Reliance repeats and realleges the allegations contained in paragraphs 1 through 37 as though set forth fully at length herein.

39. With respect to the funds in the Disbursement Accounts, CSS was acting as agent and in a fiduciary capacity as trustee for Reliance.

40. As a result of the relationship between Reliance and CSS, CSS owed Reliance fiduciary duties with regard to withdrawal and usage of funds from the Disbursement Accounts to pay allocated loss expenses and claims against policyholders insured by Reliance.

41. CSS breached the fiduciary obligations it owed to Reliance by failing to pay and turn over the Excess Funds and Subrogation Recoveries to Reliance.

42. CSS's breach of its fiduciary duties has caused Reliance to sustain damages to date of approximately $2.7 million and is entitled to relief as set forth below.

## COUNT III
### (Conversion)

43. Reliance repeats and realleges the allegations contained in paragraphs 1 through 42 as though set forth fully at length herein.

44. CSS has intentionally and without authority, exercised control over the Excess Funds and Subrogation Recoveries belonging to Reliance, interfering with and depriving Reliance of its immediate right to possession of the Excess Funds and Subrogation Recoveries.

45. CSS's unauthorized failure to pay and turn over the Excess Funds and the Subrogation Recoveries to Reliance constitutes conversion of Reliance property.

46. As a result of the conversion, Reliance has sustained damages to date of

approximately $2.7 million and is entitled to relief as set forth below.

## COUNT IV
### (Turnover of Assets and Property of the Estate)

47. Reliance repeats and realleges the allegations contained in paragraphs 1 through 46 as though set forth fully at length herein.

48. Since 1990, CSS performed services for Reliance as third party administrator with respect to insurance claims made under certain policies issued by Reliance. Pursuant to its written Agreements with CSS, Reliance provided funds to CSS for deposit into the Disbursement Accounts to be set up for each of the Accounts on behalf of Reliance from which CSS was to pay claims and allocated loss expenses pursuant to the terms of the Agreements. The proceeds of the Disbursement Accounts are assets of and remain the property of the estate of Reliance. Reliance is entitled to turnover of the Excess Funds and the Subrogation Recoveries in the Disbursement Accounts pursuant to the terms of the Commonwealth Court of Pennsylvania's October 3, 2001 Order of Liquidation, the statutory provisions of the Pennsylvania Insurance Department Law of 1921, as amended, 40 P.S. §§ 221.1 *et seq.* and common law.

**WHEREFORE**, plaintiff Joel S. Ario, in his official capacity as Acting Insurance Commissioner of the Commonwealth of Pennsylvania, as statutory Liquidator of Reliance Insurance Company (In Liquidation), for each of the claims set forth above, respectfully requests that this Honorable Court enter judgment in his favor and against the defendant and enter the following relief for him and against the defendant:

    (a) An award of damages in an amount not less than $2,670,000;

    (b) An award of turnover of all assets and property of the estate in the possession of defendant Constitution State Services, LLC;

(c) An award of pre-judgment and post-judgment interest on all funds due Reliance, together with costs and attorneys' fees; and

(d) Any other further relief that the Court deems just and appropriate.

FOX ROTHSCHILD LLP

By: _____
John A. Wait (JW2558)
100 Park Avenue
Suite 1500
New York, New York 10017
(212) 878-7900
*Attorneys for Joel S. Ario, in his official capacity as Acting Insurance Commissioner of the Commonwealth of Pennsylvania, as Statutory Liquidator of Reliance Insurance Company (In Liquidation)*

Of counsel:
Gerald E. Arth
Cheryl A. Garber
FOX ROTHSCHILD LLP
2000 Market Street, Tenth Floor
Philadelphia, Pennsylvania 19103
(215) 299-2000

Dated: August __, 2007