**EXHIBIT B**

CLAIMS SERVICE AGREEMENT

BETWEEN

RELIANCE NATIONAL INDEMNITY COMPANY

AND

CONSTITUTION STATE SERVICE COMPANY

THIS AGREEMENT made as of the first day of January, 1999 by and between Reliance National Indemnity Company having a place of business at One Tower Square - 10 GS, Hartford, CT 06183 ("Service Co."), and Reliance National Indemnity Company ("Insurer"), having a place of business in care of Reliance National Risk Specialists, 77 Water Street, New York, New York 10005 ("RNRS").

WITNESSETH:

WHEREAS, Service Co. is engaged in the business of providing certain services with respect to the investigation and payment of insurance claims;

WHEREAS, Insurer has issued those insurance policies as are set forth on Exhibit A hereto (the "Policies");

WHEREAS, Insurer desires to contract with Service Co. for the provision of its services for claims made under the Policies, and Service Co. desires to provide its services with respect to such claims, on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual agreements, covenants, representations and warranties set forth below, the parties do hereby agree as follows:

1. <u>Provision of Services.</u>

A.    Service Co. agrees to provide those services as are set forth in paragraph B below (the "Basic Services") with respect to any claim made under any of the Policies which involves an actual or alleged loss occurring during the term of the underlying Policy and which is reported to Service Co. before the date on which this Agreement shall become canceled pursuant to the provisions of Section 5 below.

B.    The Basic Services to be rendered by Service Co. with respect to any claims described in paragraph (A) above ("Claim" or "Claims") shall be the following:

1.    To establish a file with respect to each Claim in accordance with the instructions set forth in <u>Exhibit B</u> ("Client Instructions").

2.    To investigate all Claims and to provide the amount of loss reserve to be established with respect to each such Claim.

3.    To provide each Claim file with a written chronology of all actions taken with respect to the underlying Claim.

4.    To furnish all claim forms and data necessary for proper claims administration and bureau and state reporting as set forth in Exhibit B.

5.    To adjust, settle or resist all Claims within the discretionary settlement authority limit of Service Co. as set forth in Exhibit B, the Client Instructions (the "Authority Limit").

6.    To adjust, settle or resist all Claims in excess of the Authority Limit with the express prior approval of Insurer.

7.    To supervise all litigation or other proceedings involving any Claim and, where permitted, to attend any judicial or administrative hearing involving any Claim.

8.    To retain, and then redeliver or destroy, each Claim file in accordance with the File Retention and Destruction Policy set forth in Exhibit B, the Client Instructions.

9.    To monitor all treatment programs recommended to a Claimant by any care provider.

10.    To furnish Insurer with such information regarding Claims and the Disbursement Account (defined in Exhibit D hereto), and in such periodic intervals, as is set forth in Section 4 below and in the Client Instructions.

C.     Subject to the provisions of Section 5 below, Service Co. agrees to provide the Basic Services with respect to all Claims for so long as and until each Claim shall have been paid or until, in the opinion of Service Co., Insurer shall have no further liability therefor.

D.     Notwithstanding the foregoing, Insurer reserves the right to assume the control and handling of any Claim at any time, and Service Co. agrees to deliver promptly any Claim file to Insurer which it may request, but without any off-set or deduction from any of the fees or charges paid or payable by Insurer to Service Co. under Section 2 below.  The parties agree that at all times prior to and after the cancellation of this Agreement all Claim files are owned by and are the property of Insurer and shall be subject to no lien or other charge in favor of Service Co. Claim files are subject to review by Insurer and its employees and authorized agents during Service Co.'s regular business hours, without prior notice.

E.     In the event any governmental agency, broker or agent should contact Service Co. for any reason with respect to any Claim (except for ordinary and customary contact not in the nature of a complaint), Service Co. agrees to notify Insurer immediately of the nature of such communication and, if the communication is in writing, Service Co. shall send Insurer a copy thereof.

F.     In the case of each Claim, Insurer reserves the right to require Service Co. either to retain any attorney, physician, or other expert which Insurer may specify or to obtain Insurer's prior approval before retaining any attorney, physician or other professional or expert which Service Co. may seek to retain in connection with its provision of the Basic Services.

4

G.      Service Co. shall close no Claim file involving a Claim in excess of the Authority limit without the prior written approval of Insurer unless it shall have obtained such releases, stipulations and all other appropriate documents whereby Insurer is released from any and all liability it may have to any claimant in connection with the underlying Claim.

2. <u>Fees and Charges.</u>   In consideration of Service Co. providing the Basic Services for all Claims as provided above, Service Co. agrees to accept payment of those fees and other charges as are set forth in Exhibit C,   from Insurer's Insured, in accordance with the terms set forth therein.

3. <u>Payment of Claims and Allocated Loss Expenses.</u>

A.      Service Co. agrees to make all payments with respect to Claims and to pay all Allocated Loss Expenses (as defined in paragraph B below) from funds provided by Insurer in accordance with the procedures set forth in Exhibit D.

B.      The term "Allocated Loss Expenses" shall mean such of the following items of expense incurred or authorized by Service Co. as may be reasonable and necessary in connection with its provision of the Basic Services:

1.      Medical examinations of claimants, including the reasonable and necessary transportation expenses of claimants.

2.      Reports from attending or examining physicians.

3.      Attorneys' fees and disbursements.

4.    Court reporter services and transcripts.

5.    Stenographic services and transcripts.

6.    Witness attendance fees.

7.    Court costs.

8.    Appeal bonds.

9.    Printing costs related to trials and appeals.

10.    Testimony, opinions, appraisals, reports, surveys and analyses of professionals and experts.

11.    Trial and hearing attendance fees.

12.    Reports from government agencies or branches.

13.    Credit bureau reports.

14.    Private investigators.

15.    Photographs.

16.    Medical or vocational rehabilitation.

17.    Medical cost containment services, including utilization review, pre-admission authorization, hospital bill audit, provider bill audit, and medical case management, in each case incurred at the request of Insurer.

18.    Extraordinary claim investigation and/or travel expense incurred at the request of Insurer.

19.    Any similar service related to the investigation and defense of a particular Claim, or the protection of the subrogation rights of Insurer, for which Insurer shall have given prior approval.

20.    Health Service Representative.

C.    All charges for Allocated Loss Expenses shall not exceed the usual and customary local charges, and no payments for any such expenses shall be made to Service Co. or any of its affiliates (except in the case of automobile appraisals) without the prior approval of Insurer.

4. Supply of Data.

A.    For so long as this Agreement shall be in effect, Service Co. agrees to provide Insurer, within 15 days following the end of each calendar month the following:

(I)    A computerized tape, diskette, cartridge, or electronic transmission, containing loss data on an inception-to-date basis, the information specified in the current version of the "Reliance National Risk Specialist TPA Data Requirements", for each claimant. The tape, diskette, cartridge or electronic transmission shall include control totals for all claims arising under each policy.

(ii)    A "hard" copy of the control totals which are included on the tape, diskette, cartridge or electronic transmission.

(iii)    Inception-to-date loss runs containing the claim and financial information needed to support all monthly reports required hereunder shall also be delivered to Insurer within 15 days following the end of each month for which such reports are prepared.

B.     For so long as the information and tapes called for in paragraph 4(A) above are not furnished to Insurer, the obligation of Insurer to make any payments of fees and other charges under Section 2 above shall be suspended and, for purposes of paragraph 5(A) below, Insurer shall not be deemed to be in breach of this Agreement on account of not paying any such fees or charges; and, for purposes of paragraph 5(C) below, such fees and charges shall not be deemed due or becoming due to Service Co. from Insurer.

5. Cancellation of Agreement.

A.     At any time after the date hereof, this Agreement may be canceled (a) by Insurer, with or without cause, and for any reason whatsoever, upon Insurer giving Service Co. not less than 60 days' prior notice; or (b) by Service Co., in the event of a breach of this Agreement by Insurer, upon giving Insurer not less than 60 days' prior notice, provided, however, that no cancellation of this Agreement by Service Co. shall become effective unless, prior to giving such 60 days' notice, Service Co. shall give notice to Insurer of the nature of the claimed breach, shall set forth in such notice a period of time of not less than 10 days within which Insurer must cure such breach and the breach shall not have been cured within said period or if the breach is of a type not curable within such period, Insurer shall not have diligently commenced taking all steps necessary to cure such default within such 10 day period and the default shall not in fact be cured in a reasonable time thereafter.

B.     Upon the cancellation of this Agreement by Insurer, Insurer shall have the following options with respect to all Claims and Claim files then being handled by Service Co. By notice given to Service Co. not less than 30 days prior to the effective date of cancellation of this

8

Agreement, Insurer may require either (1) that all Claim files be returned to it or (2) that Service Co. continue to provide the Basic Services to all Claims for which Service Co. is responsible in accordance with Section 1 above.  If no such notice is given, then Insurer shall be deemed to have selected the option in clause (1) above.  In the event Insurer selects or is deemed to have selected the option in clause (1) above, Service Co. agrees to promptly return all Claim files to Insurer or its designee, at the sole expense of Insurer, and thereafter Service Co. shall have no further responsibility for any Claims.

C.    Except as provided above, no cancellation of this Agreement, however effected, shall relieve either party of its obligations hereunder with respect to any Claim outstanding as of the effective date of such cancellation or with respect to any amounts  which then may be due or become due from one party to the other as provided hereunder.

6. Representations of Service Co.  Service Co. represents, warrants and agrees as follows:

A.    It shall comply with all applicable federal, state and local governmental laws, rules, regulations and orders in the performance of its duties under this Agreement;

B.    It is duly authorized and licensed to perform its duties hereunder in each jurisdiction in which it  shall act and, in furtherance thereof, it shall contract only with such third parties as are also  so duly authorized and licensed; and

9

C.      It shall not assert that any Claim is not a claim covered by one of the Policies or decline to pay any Claim without the express prior approval of Insurer, whether or not such Claim is below the Authority Limit.

7. Insurance.  For as long as Service co. shall be obligated to provide the Basic Services with respect to any Claim, Service Co. agrees to maintain general liability insurance, automobile liability insurance, workers compensation insurance, fidelity insurance, errors and omissions insurance, and such other insurance coverages as are set forth in Exhibit E hereto.  Such coverages shall be written in amounts not less than those set forth in said exhibit and shall include coverage of Service Co.'s obligations under paragraph 8(B) below.  Insurer acknowledges receipt of one or more certificates of insurance evidencing the fact that all such coverages are in effect as of the date hereof and that each of the foregoing policies contains a provision to the effect that it shall not be canceled or allowed to expire without at least 30 days' prior written notice being given to Insurer.

8. Indemnity.

A.      Insurer agrees to indemnify and hold harmless Service Co., and each of its employees, officers, directors, and shareholders, from and against any and all causes of action, proceedings, penalties, fines, losses, damages, costs, expenses or other liabilities of whatever nature, including, without limitation, settlement costs and reasonable attorneys fees, court costs and other expenses actually incurred by any such party, whether in investigating, prosecuting or

defending any claim or action, or any threatened claim or action, which is based upon or arises out of or in connection with any of the following:

    (i)    any action taken or omitted to be taken by Service Co. at the specific direction of Insurer with respect to a Claim;

    (ii)    any litigation or proceeding naming a party entitled to be indemnified hereunder

    as a defendant wherein the plaintiff or petitioner in such litigation or proceeding

    does not allege any fault on the part of such party; or

    (iii)    any checks, overdrafts or other charges to, on, or related in any way, to the Disbursement Account, provided, however, that no such check, overdraft or other charge was issued or incurred by Service Co. as a result of any dishonest or other tortious act or omission by Service Co. or any of its officers, directors, employees or agents.

B.    Service Co. agrees to indemnify and hold harmless Insurer and each of its employees, officers, directors, shareholders and agents, from and against any and all causes of action, proceedings, penalties, fines, losses, damages, costs, expenses or other liabilities of whatever

11

nature, including, without limitation, settlement costs and reasonable attorneys' fees, court costs and other expenses actually incurred by any such party, whether in investigating, prosecuting or defending any claim or action, or any threatened claim or action, which are based upon or arise out of or in connection with any of the following:

(i)     any tortious act or omission on the part of Service Co. or any of its employees, officers, directors, shareholders, agents or independent contractors, or any other act taken by Service Co. that is outside the scope of its engagement as set forth in this Agreement, unless the complained of act or omission was taken at the express direction of Insurer; or

(ii)    the breach of any agreement, representation or warranty made by Service Co. in this Agreement.

C.     The indemnity provisions set forth in paragraphs 8(A) and 8(B) are made for the benefit of the respective parties identified therein, whether or not a party hereto, and may be specifically enforced by any such party as if it were a party hereto. These indemnity provisions do not pertain only to third party suits but also include the reasonable attorneys fees, court costs and other expenses incurred by a party in prosecuting any claim or suit to enforce any of its rights hereunder.

No party, otherwise entitled to be indemnified under this paragraph 8, shall be entitled to be indemnified with respect to any payments made in settlement of a claim made against it unless the party required to give indemnity hereunder shall first approve in writing the terms of any such settlement.

D.    No cancellation of this Agreement shall relieve either party of its obligations of indemnity under this Section 8.

9. Amendment and Waiver.  No amendment or waiver of any provision of this Agreement, and no consent to any departure herefrom, shall be effective or binding unless and until set forth in a writing signed by each party, and then any  such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given.  No notice or any other communication given by Service Co. to Insurer shall be construed to constitute Insurer's approval or ratification of any matter contained or referred to in such notice, unless the same be consented to by Insurer in writing.

10. Entire Contract.  This Agreement, together with the exhibits attached hereto, constitutes the entire agreement between the parties relating to the subject matter hereof, and there exist no other written or oral understandings, agreements or assurances with respect to such matters except as are set forth herein.  Unless expressly stated, this Agreement confers no rights on any person or business entity that is not a party hereto.

11. <u>Notices.</u>  All notices, requests and other communications from either party to the other shall be in writing and delivered either personally or by telecopy, in each case during regular business hours, or by certified mail, return receipt requested. Any such notice, request or other communication shall be deemed to have been given on the date of personal delivery or, if telecopied or mailed, on the date of telecopying or mailing.  All communications shall be addressed as follows:

If to Service Co.:

               Constitution State Service Company
               One Tower Square - 10 GS
               Hartford, CT 06183
    Attention:     Andrew Apicella, President


If to Insurer:

               Reliance National Indemnity Company
       c/o: Reliance National Risk Specialists
               77 Water Street
               New York, New York  10005
    Attention:     Robert Haberle, Senior Vice President


Insurer hereby authorizes and directs RNRS to act as its general agent for all purposes under this Agreement.  Without limiting the foregoing in any way, RNRS is hereby authorized to make all such modifications, amendments and extensions of this Agreement, and to give all notices and instructions, which Insurer could make or give hereunder, and when made or given, all such modifications, amendments, extensions, notices and instructions shall be valid and binding upon Insurer as if made or given by itself.


12.  <u>Assignment.</u>  Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party.


13.  <u>Binding Effect; Choice of Law</u>.  This Agreement shall be binding upon and inure to the benefit of each party hereto and their respective successors and permitted assigns.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within New York.  The parties

15

agree to submit to the jurisdiction of the appropriate Federal or State courts located in the State of New York for the purpose of any suit, action or other proceeding brought in connection with this Agreement and, the parties hereby consent that service of process in any such suit, action or proceeding may be served in the same manner as any notice may be given hereunder as set forth in Section 11 hereof. Any and all disputes arising out of or in connection with this Agreement shall be resolved in the appropriate Federal or State court located in the State of New York.

14. Severability. If any provision herein contained shall be held to be illegal or unenforceable, such holding shall not affect the validity or enforceability of the other provisions of this Agreement.

IN WITNESS WHEREOF, the parties by their authorized agents have caused this Agreement to be executed as of the date first written above.

Constitution State Service Company

By _____

Name and Title:  Andrew Apicella, President_____

Reliance National Risk Specialists on behalf of Reliance National Indemnity Company

By _____

Name and Title:  Keith M. Cerra, Assistant Vice President_____

16

EXHIBIT A

To Claims Service Agreement Dated
As of January 1, 1999 Between Constitution State Service Company
And Reliance National Indemnity Company (The "Agreement")

Insured:  Batus Holdings, Inc. D/B/A Brown & Williamson Tobacco Company

| Line of Coverage | Policy #: | Eff. Dates | Limits of Liability |
|---|---|---|---|
| Workers Compensation | NWA0119596-05 | 1/1/99-2000 | Statutory / EL - 1M<br>AL, AK, AZ, AR, CA, CO, CT, DE, DC, FL, GA, HI, ID, IL, IN, IA, KS, KY, LA, MA, ME, MD, MI, MN, MS, MT, MO, NE, NH, NJ, NM, NY, NC, OK, OR PA, RI, SC, SD, TN, TX, UT, VT, VA  (DED) |
| Workers Compensation | NWA0119597-04 | 1/1/99-2000 | Statutory / EL - 1M<br>WI only  (RETRO) |
| General Liability | NGA0119599-03 | 1/1/99-2000 | 1M w/10M GL & 2M Prod.Aggs. |
| Automobile Liability | NKA0119600-03 | 1/1/99-2000 | 2M CSL All States (except Texas) |
| Automobile Liability | NKA0119602-03 | 1/1/99-2000 | 2M CSL TX only |

EXHIBIT B

To Claims Service Agreement Dated
As of January 1, 1999 Between Constitution State Service Company
And Reliance National Indemnity Company (The "Agreement")

CLIENT INSTRUCTIONS

1. Coverage Requirements:

    A.    Service Company will perform the necessary investigation and documentation upon which to base a decision regarding coverage on each claim.

    B.    No denial of coverage may be made without the express approval of RNRS.

    C.    Coverage information will be provided to Service Company.

    D.    Service Co. will provide Insurer with field service instructions.

2. Authority Limit:

    A.    Settlement:    $250,000 per claimant

                                  $250,000 per occurrence

                                  $50,000 per occurrence for allocated loss expenses

3. File Retention and Destruction Policy:

Liability Files:  Destroy two (2) years after applicable statute of limitations has expired.

    Exceptions:

    a.    Suits - retain until expiration of appellate process.  Then destroy.

    b.    Mental Incompetents - retain indefinitely.

1

c.    Infant (Minor) Claims - retain until infant reaches majority plus applicable statute of limitations plus two (2) years.


## FIRST PARTY CLAIMS, SUBROGATION/ARBITRATION, INCIDENT REPORTS AND BOND LOSSES:

Destroy one (1) year after file closing.

Exceptions:

a.    Suits - retain until expiration of appellate process.  Then destroy.

b.    Prevailing Statute Precludes Destruction in one (1) year.


## WORKERS' COMPENSATION CLAIMS:

Medical Only Claims Excluding Occupational Disease Claims: Destroy six (6) months after applicable statute of limitations has expired.

Exceptions:

a.    Prevailing statute precludes destruction in six (6) months.


Other Than Medical Only Claims Excluding Occupational Disease Claims: Destroy one (1) year after applicable statute of limitations has expired.

Exceptions:

a.    Formal or Informal Hearing Level Claims - retain until expiration of appellate process. Then destroy.

b.    Prevailing statute precludes destruction in one (1) year.

2

<u>Occupational Disease Claims</u>: Destroy four (4) years after applicable statute of limitations has expired.

   <u>Exceptions</u>:

a.     <u>Formal or Informal Hearing Level Claims</u> - retain until expiration of appellate process. Then destroy.

b.     Prevailing statute precludes destruction in four (4) years.

4. <u>Information Regarding Disbursement Account</u>:

Service Company will provide RNRS, on a monthly basis, an itemized accounting of all payments with respect to Claims and Allocated Loss Expenses from the Disbursement Account, including separate data with respect to all deductibles and required information.

5. <u>Bureau Filings</u>:

A.    <u>Central Index Bureau Filings</u>:  Filings are required on all B.I. claims, as well as all W.C. Indemnity claims.   These may be made with Service Co.'s subscriber number and address when Service Co. does not charge a fee for the filings.

Otherwise. Service Co. will use the subscriber number provided by Insurer and not charge a fee for the filing.

B.    Other Bureau Filings: Filings made by the Service Co. to insurance departments and bureaus in various states and to the Insurance Service Office (ISO), National Association of Insurance Commissioners (NAIC), National Association of Independent Insurers (NAII), and National Council on Compensation Insurance (NCCI), will use the Insurer's Company Codes as follows:

| | ISO | NAIC | NAII | NCCI | FEIN |
|---|---|---|---|---|---|
| Reliance Insurance Company | 2232 | 24457 | 277 | 12521 | 23-0580680 |
| Reliance National Indemnity Company | 2824 | 24430 | 285 | 14478 | 23-1624911 |
| United Pacific of New York | 2238 | 36471 | 281 | 19887 | 23-2079430 |
| Reliance National of New York | 2237 | 36498 | 279 | 20184 | 23-2079428 |
| United Pacific | 2234 | 24473 | 286 | 11312 | 91-0449750 |
| Reliance Insurance Co. of California | 2496 | 44482 | 276 | 30783 | 95-4236454 |
| Reliance Insurance Co. of Illinois | 2236 | 24481 | 283 | 13994 | 36-2756532 |
| Reliance National Insurance Company | 6857 | 40592 | - | 26379 | 04-2739160 |
| Reliance Lloyds | 5781 | 39438 | - | - | 75-1687438 |

6. Claims Information:

A.    Hard Copy Loss Run Reports: To furnish to Insurer and/or designee on a monthly basis, a "Loss Run" and a "Loss Payment Register." The term "Loss Run" means a computer generated listing of claims that have been posted to Service Co.'s Data System. The term "Loss Payment Register" means a computer generated listing of accounting activity in the Loss Fund Account during the preceding month that has been posted to Service Co.'s Data System. These computer generated listings will be

4

provided to Insurer and/or its designees in hard copy or microfiche. A minimum of five (5) copies of any single listing, either hard copy, microfiche, or any combination thereof, will be provided by Service co. for each period. Service Co. reserves the unilateral right to amend or alter the substance and form of the listings to be provided to Insurer and/or its designees hereunder if Service Co. hereafter amends or alters the substance or form of such listings for its customers generally.

7. Trials/Arbitration/Mediation:

A.    RNRS shall be notified immediately of all claims that go to trial, whether or not such claim is below the authority level.

B.    No verdict may be taken on any suit, regardless of offers or demands, without the prior approval of RNRS.

C.    No agreement which commits to binding arbitration, binding mediation or any non-jury trial format may be entered into without the prior approval of RNRS.

8. Reporting of Individual Claims to RNRS:

A.    On all claims exceeding an Incurred (Outstanding plus Paid) of $250,000 per claimant, $250,000 per occurrence, or $50,000 per occurrence for Allocated Loss Expense, the claim file shall be duplicated and sent to RNRS promptly. In addition any loss which involves serious injuries of the following nature, regardless of whether you feel there is liability or not, must be duplicated and sent to RNRS immediately:

5

1.  Spinal Cord Injury.

2.  Amputations.

3.  Brain damage.

4.  Blindness.

5.  Serious Burns.

6.  Multiple fractures - involving more than one member or non-union.

7.  Brachial plexus nerve damage (nerve damage causing paralysis and loss of sensation in arm and hand).

8.  Massive internal injuries affecting body organs.

9.  Fatalities.

10. Suits naming Service Co. and/or Insurer as a defendant.

11. Any suit involving punitive damages and/or bad faith against Insured, Service Co. or Insurer.

12. Coverage questions

9. Reporting on Form 1099:

A.      Service Co. shall prepare using the Service Company's IRS Taxpayer Identification Number (TIN), and file all information returns with respect to any payments made by it under the Agreement as may be required under Section 6041 of the Internal Revenue Code of 1986, as amended, and the regulations thereunder, including all payments made to third party providers in payment of Allocated Loss Expenses.

10. Reporting to Insured of Losses with Potential Exposure Exceeding Insurer's Policy Limit:

6

A.    The Service Co. will notify the Insured to report any loss to their excess carrier when:

    1.    A loss reserve of $250,000 is posted.

    2.    When an ad damnum is greater than the policy limit or when the ad damnum is unstated.

    3.    Any catastrophe loss as outlined in section 8.A of Exhibit B.

# Exhibit C
# Brown & Williamson Tobacco Company
## Workers' Compensation, Automobile & General Liability, Including Products Liability
## Claim Service Proposal (USA Only)
## Constitution State Service Company
## <u>1/1/1999  to  1/1/2000</u>

# SOLD DEAL

## Administration and RMIS Fee

In addition to the option selected below, an annual Administrative & Risk Management Information System (RMIS) Fee of $11,000 applies, to be collected in 12 monthly installments commencing at program inception.

## Per Claim Lifetime Fees

| | |
|---|---|
| WC Medical Only Claims (CM) | $   110.00 per person/per claim |
| All Other WC Claims (CB) | $1,150.00 per person/per claim |
| Automobile Liability Claims (AL) | $   675.00 per claim * |
| General Liability Claims (LR) | $   775.00 per claim * |
| Products Liability Claims (ER) | $   775.00 per claim * |
| Incident Only Claims | $     45.00 per claim |

*Note: A limit of five (5) claimants per claim.*

## Claim Service Fees

### Claim Fee Options

Claim Service Fees will be billed monthly on an "as reported" basis.

## Claim Funding

### Claim Funding Options

*Daily* - Initial deposit of 4 days of average claim payments with daily automatic reimbursement (ACH).

**A Reliance National Claim Service Agreement forms the basis of a contract for a Claim Service Program.**

## Risk Management Information Services Fees

RMIS Fees are charged on an annual basis. If the program is not renewed, but continued RMIS services are desired, such continued services will be charged on an annual basis.

EXHIBIT D

To Claims Service Agreement Dated
As of January 1, 1999 Between Constitution State Service Company
And Reliance National Indemnity Company (The "Agreement")

A.   Service Co. shall establish a regular bank checking account with [Bank] (the "Bank") [Mellon Bank] entitled "Service Co., as custodian for Insurer" (the Disbursement Account"), to which Insurer agrees to make an initial deposit of $18,000.   The parties agree to establish the foregoing accounts within 15 days of the date hereof and to execute and deliver to the respective banks such depository resolutions, signature cards and other documents as may be requested of them in order to establish such accounts in accordance with the provisions of this Exhibit D.   The Disbursement Account shall bear the employer identification number of Insurer and any interest earned on said account shall belong to Insurer.   The Disbursement Account shall be used solely by Service Co. to make payments of Claims or to pay Allocated Loss Expenses or to receive recoveries in accordance with the terms of this Exhibit and the Agreement.   Checks drawn on the Disbursement Account be Service Co. in excess of $2,500 shall be signed by two signatories who shall be employed by Service Co.

B.   Simultaneously with the establishment of the Disbursement Account, Insurer shall establish a separate bank account in its own name with any bank of its choice, which bank shall be a member of the New York Clearing House Association (the "Funding Account").   Insurer, by appropriate letter of authorization, shall authorize Insurer's bank, at Service Co.'s direction, to transfer monies from the Funding Account to the Disbursement Account by direct debit.   The

1

amount of any such daily direct debit shall not exceed the total of items presented for payment to the Bank on account of Claims and Allocated Loss Expenses on the preceding business day, if Service Co. utilizes "cleared basis." The amount of any such daily direct debit shall not exceed the total of items issued for payment, if Service Co. utilizes "issued basis of replenishment."

C. Service Co. shall notify Insurer before making any payment in excess of the settlement authority as described in Exhibit B. or $25,000, whichever is less.

D. Unless otherwise agreed to by the parties, the Disbursement Account and the Funding Account shall be maintained in accordance with the foregoing for so long as Service Co. shall be obligated to render the Basic Services with respect to any Claim under the Agreement.

E. Monthly Escrow Account Reconciliations - TPA should be contractually required to:

 1. Prepare/forward (to RN for RN Funded Accounts, Insured for Insured funded accounts) within 30 days of the Escrow account reconciliation package which includes the following elements:

  a. Bank Statements

  b. Check Register

  c. Outstanding Check Listing

  d. Deposits Detail

   1. ACH's

   2. Recoveries

2

           3.    Returns of Overpayments, etc., described in detail.

    e.    Disbursement Detail

           1.    Issued Checks (Check Register, per b. above).

           2.    Other Disbursements, described in detail.

    f.    Reconciliation of monthly net disbursements to consecutive months' change in net reported paid losses per Loss Run.

    g.    Reconciliation of Account Balance per Bank versus Book.

F.  At such time as Service Co. is no longer obligated to provide the Basic Services with respect to any Claim under this Agreement, Service Co. agrees to close the Disbursement Account and to remit any closing balance to Insurer.  It is understood that any recoveries received after the Disbursement Account has been closed shall be immediately forwarded to Insurer.

EXHIBIT E

To Claims Service Agreement Dated
As of January 1, 1999 Between Constitution State Service Company
And Reliance National Indemnity Company (The "Agreement")

<u>Insured:</u>   Batus Holdings, Inc. D/B/A Brown & Williamson Tobacco Company

<u>Third Party Administrator:</u>   Constitution State Service Company

| Line of Coverage | Policy # | Eff. Dates | Insurer | Limits of Liability |
|---|---|---|---|---|
| Professional Liability | | | | $5 million per aggregate |
| Employee Dishonesty | | | | $5 million per aggregate |
| Crime - Money & Securities | | | | RN listed as "loss payee" |
| Workers' Compensation | | | | statutory/$1 million EL |
| Automobile Liability | | | | 5,000,000 |
| General Liability | | | | 5,000,000 |

1

## ADDENDUM TO CLAIMS SERVICE AGREEMENT

This Addendum is made this 21 day of May , 1999, by and between Reliance National Indemnity Company and its affiliated companies for whom CSSC is performing Claim Services (hereinafter referred to as "Insurer") and Constitution State Service Company (hereinafter referred to as "CSSC" or "Service Co.").

WHEREAS, Insurer and CSSC (hereinafter collectively referred to as "the parties") have entered into a Claim Service Agreement (the "Agreement") dated as of – May 21, 1999 , and

WHEREAS, the parties wish to amend the Agreement to reflect certain provisions to which they have agreed which were not in the original Agreement, and

WHEREAS, the parties wish this Addendum to be effective from January 1, 1999.

NOW, THEREFORE, the parties agree that said Agreement is amended as follows:

1.     Section 2. and Exhibit C are amended by adding the following to each:

If Insurer's Insured fails to pay Service Co. its fees and other charges, Service Co. may terminate this Agreement by giving Insurer sixty (60) days notice of termination. During this 60 day period, Service Co. will continue to provide Basic Services as required by this Agreement until such time as the Claim files are returned to Insurer, but in no event shall such services be provided for longer than the 60 day notice period, provided:

A.     Insurer continues to pay Service Co. its fees and other charges during this period, and

B.     If Insurer fails to pay Service Co. its fees and other charges during this period, Service Co. will cease to provide Basic Services and immediately return Claim files to Insurer, and

C.     Claim files returned to Insurer pursuant to this Section will be returned at the expense of Insurer.

2.     Section 3. and Exhibit D are amended by adding the following to each:

At Insurer's request, Service Co. agrees to establish the Loss Fund Account and to seek such payments and availability of funds to pay Claims and Allocated Loss Expenses (including implementation of procedures to make such funds available) directly from the Insurer's Insured. In the event the Insurer's Insured does not make any such payments or funds available (including implementation of procedures to make funds available) to Service Co., Insurer, as guarantor thereof,

agrees to immediately pay to Service Co., upon request from Service Co., with supporting documentation, such funds not paid or such funds not made available to Service Co. by Insurer's Insured.  If Insurer fails to pay Service Co. pursuant to this Section, Service Co. will cease to provide Basic Services and immediately return Claim files to Insurer, at the expense of Insurer.

3.     Section 4.A.iii is amended to read as follows:

    (iii)     Inception-to-date loss runs containing the claim and financial information needed to support all monthly reports required hereunder shall also be delivered to Insurer by the 15th working day following the end of each month for which such reports are prepared.

4.     Section 5.C. is amended to read as follows:

    C.     Except as provided above, no cancellation of this Agreement, however effected, shall relieve either party of its obligations hereunder with respect to any Claim outstanding as of the effective date of such cancellation or with respect to any amounts which then may be due or become due from one party to the other as provided hereunder, provided that, Service Co. shall have no responsibility to pay claims unless Insurer or its Insured make funds available to pay such Claims pursuant to the terms and conditions of this Agreement.

5.     The following sentence is added to Section 5.A. of Exhibit B:

Service Co. will use its own subscriber number and address.

6.     Section 9.A. of Exhibit B is deleted and replaced by the following:

    A.     Service Co. shall prepare using the Service Co.'s IRS Taxpayer Identification Number (TIN), and file all information returns with respect to any payments made by it under the Agreement as may be required under Section 6041 of the Internal Revenue Code of 1986, as amended, and the regulations thereunder, including all payments made to third party providers in payment of Allocated Loss Expenses.

7.     The heading and the opening line to Section 10.A. of Exhibit B are amended to read:

Reporting of Excess Losses

    A.     The Service Co. will notify the Insured to report any excess loss to its excess carrier only when:

8.     The last sentence in Section A. of Exhibit D is deleted.

2/24/97 Addendum

9.    Section E. of Exhibit D is amended to read as follows:

Insured shall pay to Service Co. a Funding Deposit in the amount of $26,000 .
This deposit will be held by Service Co. in its general accounts.. Service Co. will
fund the Disbursement Account for payment of Claims and Allocated Loss
Expenses up to the amount of the Funding Deposit. Claim payments and
Allocated Loss Expenses paid on behalf of Insured shall be charged against the
Funding Deposit. In addition, Service Co. loss systems will generate (as
applicable) charges for Allocated Loss Expenses which charges will be payable
through the Disbursement Account. Each month Service Co. will invoice Insured
for amounts paid or charges assessed during the previous month. Payment will be
due to Service Co. upon receipt. Service Co. reserves the right to require
additions to the Funding Deposit to cover higher payout levels of Claims which
would deplete the level of the Funding Deposit to less than 20% of the Funding
Deposit. In the event an increase in the Funding Deposit is required, Service Co.
will provide Insured with documentation of the analysis and notification of the
amount of increase in the deposit. The increase to the Funding Deposit must be
received by Service Co. within five (5) business days after Insured is notified of the
need for an increase.

If Insured's program with Service Co. is renewed, Service Co. may also
automatically continue the Funding Program and adjust Insured's deposit balance
as necessary using the same analysis, notification and procedures described above.
Furthermore, if Insured's program with Service Co. is not renewed, Service
Company reserves the right to adjust Insured's deposit balance as necessary using
the same analysis, notification and procedures described above.

All payments of approved, settled or litigation Claims, as well as all payments of
Allocated Loss Expenses shall be made by Service Co. on behalf of Insured on a
continuous basis by means of checks drawn on its Disbursement Account
described in the Funding Arrangement. Notwithstanding the foregoing, Service
Co. shall not make any Claim payment or incur Allocated Loss Expenses per Claim
in excess of the settlement authority described in Exhibit B, unless prior approval
is received from Insurer.

10.    The parties agree that this Addendum is included in the original Agreement and
that the signatures on the original Agreement also apply to this Addendum. The
parties agree that to the extent this provision conflicts with Section 9. of the
original Agreement, this provision governs.

All other provisions of the subject Agreement remain unchanged.

2/24/97 Addendum

# ACORD. CERTIFICATE OF INSURANCE

| | ISSUE DATE (MM/DD/YY) |
|---|---|
| | 3-16-99 |

**PRODUCER**

CORPORATE INSURANCE ACCT 00097

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

## COMPANIES AFFORDING COVERAGE

| COMPANY LETTER A | TRAVELERS INDEMNITY COMPANY OF IL |
|---|---|
| COMPANY LETTER B | |
| COMPANY LETTER C | |
| COMPANY LETTER D | |
| COMPANY LETTER E | |

**INSURED**

CONSTITUTION STATE SERVICE COMPANY
C/O CITIGROUP INC.
ONE TOWER SQUARE
HARTFORD, CT 06183

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR. [ ] OWNER'S & CONTRACTOR'S PROT. | TJEXGL230T754-1-98 | 04-01-98 | 07-01-99 | GENERAL AGGREGATE | $2,000,000 |
| | | | | | PRODUCTS-COMP/OP AGG. | $2,000,000 |
| | | | | | PERSONAL & ADV. INJURY | $1,000,000 |
| | | | | | EACH OCCURRENCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $1,000,000 |
| | | | | | MED. EXPENSE (Any one person) | $ 5,000 |
| | **AUTOMOBILE LIABILITY** [ ] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS [ ] GARAGE LIABILITY | | | | COMBINED SINGLE LIMIT | $ |
| | | | | | BODILY INJURY (Per Person) | $ |
| | | | | | BODILY INJURY (Per Accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | **EXCESS LIABILITY** [ ] UMBRELLA FORM [ ] OTHER THAN UMBRELLA FORM | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| A | **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | TC2JUB237T500-3-98 | 04-01-98 | 07-01-99 | [X] STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $1,000,000 |
| | | | | | DISEASE—POLICY LIMIT | $1,000,000 |
| | | | | | DISEASE—EACH EMPLOYEE | $1,000,000 |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/RESTRICTIONS/SPECIAL ITEMS

## CERTIFICATE HOLDER

FOR INFORMATIONAL PURPOSES ONLY

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE

*Leslie Qunatt Ind*

ACORD 25-S (7/90) ©ACORD CORPORATION 1990

# ACORD. CERTIFICATE OF INSURANCE

DATE (MM/DD/YY) 5-4-99

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| CORPORATE INSURANCE ACCT 00097 | **COMPANIES AFFORDING COVERAGE** |

| | COMPANY LETTER A | TRAVELERS INDEMNITY COMPANY OF IL |
|---|---|---|
| | COMPANY LETTER B | |

**INSURED**

CONSTITUTION STATE SERVICE COMPANY
C/O CITIGROUP INC.
ONE TOWER SQUARE
HARTFORD, CT 06183

| | COMPANY LETTER C | |
|---|---|---|
| | COMPANY LETTER D | |
| | COMPANY LETTER E | |

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | GENERAL AGGREGATE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | PRODUCTS-COMP/OP AGG. | $ |
| | ☐ CLAIMS MADE ☐ OCCUR. | | | | PERSONAL & ADV. INJURY | $ |
| | OWNER'S & CONTRACTOR'S PROT. | | | | EACH OCCURRENCE | $ |
| | | | | | FIRE DAMAGE (Any one fire) | $ |
| | | | | | MED. EXPENSE (Any one person) | $ |
| A | **AUTOMOBILE LIABILITY** ☒ ANY AUTO | TC2JCAP237T5088-98 | 04-01-98 | 07-01-99 | COMBINED SINGLE LIMIT | $ 1,000,000 |
| | ☒ ALL OWNED AUTOS | | | | BODILY INJURY (Per Person) | $ |
| | ☐ SCHEDULED AUTOS | | | | | |
| | ☒ HIRED AUTOS | | | | BODILY INJURY (Per Accident) | $ |
| | ☒ NON-OWNED AUTOS | | | | | |
| | ☐ GARAGE LIABILITY | | | | PROPERTY DAMAGE | $ |
| | **EXCESS LIABILITY** | | | | EACH OCCURRENCE | $ |
| | UMBRELLA FORM | | | | AGGREGATE | $ |
| | OTHER THAN UMBRELLA FORM | | | | | |
| | **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | | | | STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $ |
| | | | | | DISEASE—POLICY LIMIT | $ |
| | | | | | DISEASE—EACH EMPLOYEE | $ |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/RESTRICTIONS/SPECIAL ITEMS

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| FOR INFORMATIONAL PURPOSES ONLY | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES. |
| | AUTHORIZED REPRESENTATIVE *Leslie Gematt/Ind* |

ACORD 25-S (7/90) ©ACORD CORPORATION 1990

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

**PRODUCER**
J&H Marsh & McLennan
One State Street
Hartford, CT 06103

**INSURERS AFFORDING COVERAGE**

**INSURED**
Constitution State Service Company
One Tower Square
Hartford, CT 06183

| INSURER A: | AISLIC |
|---|---|
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| NSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | FIRE DAMAGE (Any one fire) | $ |
| | ☐ CLAIMS MADE ☐ OCCUR | | | | MED EXP (Any one person) | $ |
| | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $ |
| | **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | |
| | ☐ ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | ☐ SCHEDULED AUTOS | | | | | |
| | ☐ HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | ☐ NON-OWNED AUTOS | | | | | |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **GARAGE LIABILITY** | | | | AUTO ONLY - EA ACCIDENT | $ |
| | ☐ ANY AUTO | | | | OTHER THAN EA ACC | $ |
| | | | | | AUTO ONLY: AGG | $ |
| | **EXCESS LIABILITY** | | | | EACH OCCURRENCE | $ |
| | ☐ OCCUR ☐ CLAIMS MADE | | | | AGGREGATE | $ |
| | | | | | | $ |
| | ☐ DEDUCTIBLE ☐ RETENTION $ | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU-TORY LIMITS / OTHER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | **OTHER** Insurance Company Professional Liability | 244 23 33 | 06/01/98 | 06/01/99 | $25,000,000 | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: ___ | CANCELLATION |
|---|---|---|
| | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL **30** DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

**ACORD 25-S (7/97)** © ACORD CORPORATION 1988

# ACORD. CERTIFICATE OF INSURANCE

January 29, 1997

| PRODUCER | |
|---|---|
| Marsh & McLennan, Inc.<br>1166 Avenue of the Americas - 38th Floor<br>New York, NY 10036 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW |

**COMPANIES AFFORDING COVERAGE**

| | | |
|---|---|---|
| COMPANY LETTER | A | Continental Casualty Company |

**INSURED**

Constitution State Service Company
c/o Travelers Group Inc.
One Tower Square
Hartford, CT 06183

| | | |
|---|---|---|
| COMPANY LETTER | B | |
| COMPANY LETTER | C | |
| COMPANY LETTER | D | |
| COMPANY LETTER | E | |

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO. LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | GENERAL AGGREGATE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | PRODUCTS-COMP/OP AGG. | $ |
| | CLAIMS MADE    OCCUR. | | | | PERSONAL & ADV. INJURYS | $ |
| | OWNER'S & CONTRACTOR'S PROT. | | | | EACH OCCURRENCE | $ |
| | | | | | FIRE DAMAGE (Any one fire) | $ |
| | | | | | MED. EXPENSE (Any one person) | $ |
| | **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT | $ |
| | ANY AUTO | | | | | |
| | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | SCHEDULED AUTOS | | | | | |
| | HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | NON-OWNED AUTOS | | | | | |
| | GARAGE LIABILITY | | | | PROPERTY DAMAGE | $ |
| | **EXCESS LIABILITY** | | | | EACH OCCURRENCE | $ |
| | UMBRELLA FORM | | | | AGGREGATE | $ |
| | OTHER THAN UMBRELLA FORM | | | | | |
| | **WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY** | | | | STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $ |
| | | | | | DISEASE-POLICY LIMIT | $ |
| | | | | | DISEASE-EACH EMPLOYEE | $ |
| A | OTHER Financial Institution Blanket Bond | 161-833-840 | 8/10/96 | 7/31/99 | | $5,000,000 |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS**

XXXXXXXXXXX    Coverage:    Fidelity, Premises, Transit, Forgery or Alteration, Securities Forgery, Counterfeit Currency, Computer Crime Coverage.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| For Informational Purposes Only | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES. |
| | **AUTHORIZED REPRESENTATIVE**<br>Robert Di Scala |

ACORD 25-S (7/90)    ACORD CORPORATION 1990

# ACORD CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YY)** 05/04/1999

**PRODUCER**

AON RISK SERVICES, INC. OF N.Y.
TWO WORLD TRADE CENTER
NEW YORK, N.Y. 10048
tele. (212) 441-2506
fax (212) 479-3264

Serial # 501901

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

| | |
|---|---|
| COMPANY A | CITICORP INSURANCE U.S.A., INC. |
| COMPANY B | |
| COMPANY C | |
| COMPANY D | |

**INSURED**

CITIGROUP, INC. AND SUBSIDIARIES
C/O CORPORATE INSURANCE & RISK MANAGEMENT
666 FIFTH AVENUE - 4TH FL/ ZONE 2
NEW YORK, N.Y., 10043

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES, LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | GENERAL AGGREGATE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ CLAIMS MADE ☐ OCCUR | | | | PERSONAL & ADV INJURY | $ |
| | ☐ OWNER'S & CONTRACTOR'S PROT | | | | EACH OCCURRENCE | $ |
| | | | | | FIRE DAMAGE (Any one fire) | $ |
| | | | | | MED EXP (Any one person) | $ |
| | **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT | $ |
| | ☐ ANY AUTO | | | | | |
| | ☐ ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | ☐ SCHEDULED AUTOS | | | | | |
| | ☐ HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | ☐ NON-OWNED AUTOS | | | | | |
| | | | | | PROPERTY DAMAGE | $ |
| | **GARAGE LIABILITY** | | | | AUTO ONLY - EA ACCIDENT | $ |
| | ☐ ANY AUTO | | | | OTHER THAN AUTO ONLY: | |
| | | | | | EACH ACCIDENT | $ |
| | | | | | AGGREGATE | $ |
| A | **EXCESS LIABILITY** | CU001/99 | 3/1/1999 | 4/01/2002 | EACH OCCURRENCE | $ 24,000,000 |
| | ☒ UMBRELLA FORM | | | | AGGREGATE | $ |
| | ☐ OTHER THAN UMBRELLA FORM | | | | | $ |
| | **WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU-TORY LIMITS ☐ OTHER ☐ | |
| | THE PROPRIETOR/ PARTNERS/EXECUTIVE OFFICERS ARE: ☐ INCL ☐ EXCL | | | | EL EACH ACCIDENT | $ |
| | | | | | EL DISEASE - POLICY LIMIT | $ |
| | | | | | EL DISEASE - EA EMPLOYEE | $ |
| | **OTHER** | | | | | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS**
AS RESPECT SERVICES PROVIDED BY CONSTITUTION STATE SERVICE COMPANY.

## CERTIFICATE HOLDER

FOR INFORMATION PURPOSES ONLY

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE OF AON RISK SERVICES, OF NEW YORK

ACORD 25-S (1/95)

© ACORD CORPORATION 1988